78 N.J. Super. 102 (1963)
187 A.2d 620
VORNADO, INC., A KANSAS CORPORATION, PLAINTIFF,
v.
R.H. MACY & CO., INC., ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 10, 1963.
*103 Mr. Samuel Denstman for plaintiff (Messrs. Simon, Jaffe & Denstman, attorneys).
Mr. Frederick L. Bernstein for defendants R.H. Macy & Co., Inc., Gimbel Bros. Inc., The New York Times Company, The New York Herald Tribune, Inc., The Hearst Corporation and The News Syndicate Co., Inc. (Mr. Walter H. Jones, attorney).
Mr. Donald Wm. deCordova for defendant Stern Bros. Inc. (Messrs. Morrison, Lloyd & Griggs, attorneys).
*104 MINTZ, J.S.C.
Defendants move for judgment on the pleadings. The complaint in substance alleges the following facts.
Plaintiff Vornado, Inc., owns and operates a chain of retail department stores in Bergen, Passaic, Morris, Hudson, Middlesex, Monmouth, Somerset and Union Counties. Defendants R.H. Macy & Co., Inc., Stern Bros., Inc., and Gimbel Bros., Inc. operate department stores in one or more of the counties of Essex, Bergen and Passaic. The enactment of chapter 119 of the Laws of 1959, N.J.S. 2A:171-5.8 et seq. (hereinafter referred to as the "act"), renders unlawful the selling or attempting to sell or offering to sell on Sunday certain designated categories of merchandise except as works of necessity and charity or as isolated transactions not in the usual course of business. On November 15, 1959, by virtue of referendums, the cited act became operative in the aforementioned counties.
Plaintiff and its predecessor corporation, Two Guys From Harrison, Inc., operated their store premises on Sundays, selling large quantities of merchandise, an activity subsequently prohibited on Sundays when the act became operative in the counties where the stores were located. Consequently, plaintiff lost the profits it might otherwise have earned and rentals paid by its concessionaires which are largely determined by volume of gross sales.
The remaining codefendants are newspaper publishers whose newspapers are sold and circulated throughout New Jersey. Since the act became operative, the department store defendants have inserted advertisements in the newspapers published by said codefendants and circulated on Sunday in said counties. The advertisements invite the readers to telephone "Macy's," "Gimbel's" and "Sterns" on Sundays for the purpose of ordering goods, and specifically invite telephone communications from New Jersey residents. As a result of these advertisements, the department stores conduct a large Sunday telephone business involving merchandise specifically prohibited from sale on Sunday under the act.
*105 Plaintiff notified the Attorney General of the State of New Jersey and the prosecutors of the counties where the act is operative that such conduct constituted a violation of the subject act, but said officials have failed to take any enforcement action.
Plaintiff complains that while it has been prohibited from selling goods affected by the act on Sundays, the defendant store operators, competitors of plaintiff, are in this manner permitted to sell, offer for sale, and engage in the business of selling goods on Sundays in said counties to customers who would otherwise purchase goods from stores operated by plaintiff on secular days of the week. Finally, it is asserted that the activities of the defendant store owners, aided and abetted by the defendant newspaper publishers, result in discriminatory enforcement of the act and irreparable injury to plaintiff.
A declaratory judgment is sought adjudicating the conduct of defendants to be unlawful and in violation of the act. Plaintiff further seeks to enjoin defendants from engaging in the sale or attempted sale of goods on Sundays through the means described.
An analogous situation was passed upon in People v. Gimbel Bros., Inc., 202 Misc. 229, 115 N.Y.S.2d 857 (Spec. Sess. 1952). There the defendant was charged with violating section 2147 of the New York Penal Law, McKinney's Consol. Laws, c. 40, prohibiting, with certain exceptions, all manner of selling or offering for sale of any property on Sunday. The defendant advertised in the Sunday metropolitan newspapers that customers might telephone the store on Sundays to order the advertised merchandise. The public was not permitted access to the premises. Under section 82 of the New York Personal Property Law, McKinney's Consol. Laws, c. 41, the word "sale" is defined as "an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." The court held that there is no sale unless the goods are actually transferred or unless there is a transfer of title or property in the goods  none of which *106 is accomplished on Sunday. It also held that the advertisement of property for sale in a Sunday newspaper did not constitute an offer of sale but solely an invitation to customers to offer to purchase. It further observed that:
"The addition of a telephone answering service does not turn an advertisement in a Sunday newspaper from an invitation to order into an offer of sale. All that the defendant has done in furnishing a telephone answering service is to give the customer an opportunity to make an offer on Sunday." (115 N.Y.S.2d, at p. 858)
Plaintiff, however, urges that N.J.S. 2A:171-5.8 makes it unlawful on Sundays to "sell, attempt to sell or offer to sell or to engage in the business of selling" merchandise in the proscribed categories, and that sales sought to be effected through advertisements in Sunday newspapers and over the telephone on Sundays are within the purview of the quoted prohibitory language. Plaintiff relies upon the definitions in N.J.S. 2A:171-5.10. That section specifically provides that:
"The following definitions are not to be deemed as all inclusive and shall apply for the words or terms used in this act unless other meaning is clearly apparent from the language or context:

* * * * * * * *
`Sell' means to enter into an agreement whereby the seller transfers ownership or property in the goods or an interest in the goods to the purchaser for a consideration, whether or not the transfer is for immediate or future delivery, and whether or not the transaction is regarded as absolute, conditional or secured, and whether or not immediate consideration is paid therefor. The acceptance of a deposit for future delivery of any such merchandise, or an agreement for future delivery of any such merchandise, whether or not immediate consideration is paid therefor, shall also be deemed a sale for purposes of this act.
`Offer to sell' means the acceptance of bids or proposals for the purchase of goods at a future date or the attempt to induce a sale as hereinabove defined, or the attempt to induce an immediate transfer of any such merchandise, but not to include advertising or display of any such merchandise which merchandise is not available for purchase on Sunday.
`Engage in selling' means the attempt to sell or to induce an immediate or future transfer of any such merchandise by describing, *107 explaining, extolling or identifying any such merchandise while the seller is in personal contact with the potential purchaser."
The rationale of People v. Gimbel Bros., Inc., supra, is applicable to the instant situation. The conduct complained of is not a "sale" within the statutory definition of that term. There is no transfer of ownership in specific goods or an interest in the same through the telephone call, since no goods have been allocated or transferred to any customer. Nor is the risk of loss transferred to the party making the telephone call.
"Offer to sell" does not include the advertising of merchandise which is not available for purchase on Sunday. The term "purchase" may be equated with the term "sell" and accordingly denotes the transfer of ownership in allocated goods or in an interest in same to the purchaser. The Sunday advertisements and the telephone answering service do not accomplish this result.
As already observed, "engage in selling" means the attempt to sell "while the seller is in personal contact with the potential purchaser." By "personal contact" the Legislature presumably intended personal confrontation. I do not believe that it intended to substantially regulate interstate telephonic communication under this act. Such type of communication was not its concern.
Any ambiguities in the statutory definitions under consideration are dispelled upon inquiry into the legislative intent in adopting the subject law. The act is not a ban on worldly employment or business on Sunday. In fact, it has been held to have impliedly repealed prior legislation that was such a general prohibition. Two Guys From Harrison, Inc. v. Furman, 32 N.J. 199, 225 (1960).
The legislative purpose in enacting this act was the elimination of traffic and the hustle and bustle caused by the Sunday sales of the proscribed merchandise so as to prevent unreasonable interference with the efforts of the vast majority of the citizens to find rest and leisure on Sundays.
*108 "Such is the conception of the evil which reasonably may be inferred from the title and terms of chapter 119." (Ibid, at p. 228)
See also State v. Fass, 36 N.J. 102 (1961), cert. denied Fass v. State of New Jersey, 370 U.S. 47, 82 S.Ct. 1167, 8 L.Ed.2d 398 (1962).
The advertisements in Sunday newspapers and a telephone answering service are wholly unrelated to the evils intended to be dealt with and are not prohibited under the act.
In view of this determination it is unnecessary to pass upon the further arguments advanced by defendants to the effect that this action is not maintainable by the plaintiff. I merely observe that the complaint does not allege that plaintiff was prohibited from advertising in Sunday newspapers and in providing a telephone answering service. Certainly, defendants have not interfered with such rights of the plaintiff.
Judgment on the pleadings will be entered in favor of the defendants. An appropriate form of judgment will be submitted, consented to as to form or to be settled upon notice.